UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNDRA POWELL,                                                      PLAINTIFF

V.                                          CIVIL ACTION NO. 3:19-CV-918-HTW-RPM

COMMISSIONER OF
SOCIAL SECURITY,                                                   DEFENDANT

## REPORT AND RECOMMENDATION

## I.     INTRODUCTION

On December 16, 2019, plaintiff Undra Powell ("Powell" or "plaintiff") filed this action under 42 U.S.C. § 405(g), seeking judicial review of the denial by the defendant Commissioner of Social Security ("Commissioner") of his application for supplemental security income ("SSI") under Title XVI of the Social Security Act ("SSA"). Doc. [1].

Powell is a 5'9", 400-pound man, who was 40 years old at the time that he filed for SSI. Doc. [10], at 19–20, 23. He lives alone and has completed the 11th grade. *Id.*, at 20. He most recently worked as a barber, but stopped working due to back pain, feet swelling, and difficulty holding clippers in his hands. *Ibid.* Powell contends that he is disabled because he suffers from several impairments, including but not limited to degenerative arthritis, lumbar disc disease, peripheral neuropathy, sciatica, and obesity. *Id.*, at 16. The alleged onset of his disability is July 1, 2015. *Id.*, at 14.

## II.     Procedural History

On July 17, 2015, Powell filed for SSI. Doc. [10], at 16. The Social Security Administration ("Administration") denied Powell's application initially and upon reconsideration. Doc. [10], at

67–68. Thereafter, on December 31, 2015, Powell filed a request for a hearing before an ALJ. *Id.*, at 96–99. On January 18, 2018, Powell had his first hearing in front of an ALJ. *Id.*, at 38.  However, since Powell was unable to produce certain medical records at the time of the hearing, a second hearing was held on September 6, 2018. *Id.*, at 53.[1] At the supplemental hearing, the ALJ also received sworn testimony from Vocational Expert ("VE") Dana Lessne. *Id.*, at 55. On November 21, 2018, the ALJ ruled that Powell was not entitled to SSI. *Id.*, at 14–24. Thereafter, Powell filed a timely appeal to the Appeals Counsel ("AC"). The AC denied Powell's request for review, and the appeal, on October 16, 2019. *Id.*, at 5–10. On December 16, 2019, Powell filed the present action. Doc. [1].

### III.    ALJ's Opinion

In his opinion, the ALJ made the following findings of fact. First, the ALJ concluded that Powell has not engaged in substantial gainful activity since July 17, 2015. Doc. [10], at 16. The ALJ further found that Powell suffered from several "severe" medical impairments, including degenerative arthritis, peripheral neuropathy, sciatica, obesity, and diabetes mellitus. *Ibid.* At step two, the ALJ also determined that Powell's hypertension and obstructive sleep apnea were medically determinable impairments, but not "severe." *Ibid.* Next, the ALJ concluded that Powell did not suffer from a severe impairment or combination of impairments that meets or medically equals the severity of one of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*, at 18.

Next, the ALJ determined Powell's residual functional capacity ("RFC"). Doc. [10], at 19–22. The ALJ concluded that Powell was able to "perform sedentary work as defined in 20 C.F.R. 416.967(a), except that he can lift and/or carry 20 pounds occasionally and 10 pounds frequently." *Id.*, at 19. The ALJ further opined that Powell could: (i) "stand and/or walk for 2 hours in an 8-

---

[1] In passing, the Court notes that Powell, a Mississippi resident, did not personally attend the second hearing due to storm conditions and issues connecting via telephone. *Id.*, at 55.

hour day[;]" (ii) "frequently push and/or pull with [his] upper extremities[;]" (iii) "frequently reach waist to chest with both arms[;]" (iv) "frequently reach above shoulder level with both arms[;]" (v) "constantly handle with both hands, constantly finger with both hands, and frequently feel[;]" (vi) "occasionally work around extreme cold[;]" (vii) "frequently work around extreme heat[;]" and (viii) "frequently work around wetness and humidity, vibration, and pulmonary irritants." *Ibid.* However, the ALJ also noted several limitations, indicating that Powell (i) "required a stand/sit option with an alternating interval of 1-2 hours[;]" (ii) "must avoid climbing ramps or stairs[;]" (iii) "must avoid climbing ladders or stairs[;]" (iv) "must avoid balancing, stooping, kneeling, crouching, and crawling[;]" and (v) "must avoid working around high, exposed places and moving, mechanical parts." *Ibid.* In short, the ALJ concluded that the plaintiff's RFC enabled him to do sedentary work with some limitations. *Ibid.*

Thereafter, the ALJ concluded that Powell could not return to being a barber, his past relevant work. *Id.*, at 22. At step five, the ALJ found that Powell was a "younger" individual age 15–44 because he was 40 years old on the date that he filed for SSI. *Id.*, at 23. Further, the ALJ found that Powell has a limited education and is able to communicate in English. *Id.*, at 23. Thereafter, the ALJ noted that job skill transferability was not material to determining disability because use of the VE rules as a framework supports a finding that Powell is "not disabled," whether or not he has transferable job skills. *Ibid.* Finally, the ALJ concluded that, considering Powell's age, education, work experience, and RFC, there are jobs that exist in significant numbers, around 60,000, in the national economy that he can perform, including as a clerk, document preparer, and surround-system monitor. *Ibid.* Thus, the ALJ concluded that Powell was not "disabled" under the SSA. *Id.*, at 24.

## IV.    **Arguments**

Powell argues that the ALJ made five errors that mandate remanding the present case for further administrative proceedings. Doc. [11], at 3. First, Powell argues that the ALJ erred in finding that his only "severe impairments" were degenerative arthritis, lumbar disc disease, peripheral neuropathy, sciatica, obesity, and diabetes mellitus. *Id.*, at 11–14. According to Powell, he also suffers from hypertension, sleep apnea, and "heart disease"—which each clear the *de minimis* hurdle to be considered severe. *Id.*, at 13–14. Second, Powell argues that the medical evidence only supports a finding that he is incapable of sedentary work. *Id.*, at 14–15. Third, Powell argues that the ALJ erred by finding Powell capable of performing sedentary work in contravention of Social Security Ruling ("SSR") 96–9P. *Id.*, at 15–17. Fourth, Powell argues that the ALJ erred by failing to follow SSR 96–8P in formulating his RFC determination and the hypothetical offered at the hearing. *Id.*, at 17–18. Finally, Powell argues that "the administrative law judge declined to follow/fail to correctly apply the law in this case, failed to fairly and fully consider the evidence as required by the administrative procedure and Social Security Acts, and his unfavorable decision is not supported by substantial evidence." *Id.*, at 18.

In opposition, the Commissioner first responds that (i) any error at the second step is harmless because the ALJ proceeded to the subsequent steps in the analysis, and (ii) the ALJ considered these health issues at later steps in the analysis. Doc. [14], at 7–14. Addressing Powell's second argument, the Commissioner responds that (i) whether the ALJ discounted Dr. Lamm's statement that Powell cannot perform his past work as a barber is an issue reserved for the Commissioner, and (ii) Dr. Assaf did not conclude that Powell was incapable of sedentary work, as "sedentary work" is defined under SSR 96–9P. *Id.*, at 20–22. In response to Powell's third argument, the Commissioner responds that the ALJ properly complied with SSR 96–9P because (i) Powell reads

4

Dr. Assaf's medical report incorrectly and (ii) the ALJ held a supplemental hearing, in part, so that he could consult a VE. *Id.*, at 17–20. In response to Powell's fourth argument, the Commissioner responds that the ALJ properly determined Powell's RFC and did not need to match his opinion to that of the medical evidence on a function-by-function basis. *Id.*, at 15–17. Finally, the Commissioner argues that the record establishes that the ALJ's decision was supported by substantial evidence. *Id.*, at 22–24.

## V.    Standard of Review

Under 42 U.S.C. § 405(g), the Court's review is limited to two inquiries: "(1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the Commissioner applied the proper legal standard." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). "Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992) (citing *Richardson v. Perales*, 402 U.S. 389, 400, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). Stated differently, it "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154, 203 L.Ed.2d 504 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). However, "[c]onflicts of evidence are for the Commissioner, not the courts, to resolve." *Perez*, 415 F.3d at 461 (citing *Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002)).

## VI.    Five-Step Process Generally

A claimant is "disabled" as defined in the Social Security Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment

which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner uses a sequential, five-step approach to determine whether a claimant is so disabled. The steps include: "(1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity." *Perez*, 415 F.3d at 461 (citing *Masterson*, 309 F.3d at 271–72).

The burden of proof is on the claimant at the first four steps. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The burden of proof shifts to the Commissioner at the fifth step to establish the existence of other available substantial gainful employment that a claimant can perform. *Fraga v. Bowen*, 810 F.2d 1296, 1301–2 (5th Cir. 1987). If the Commissioner identifies such employment, the burden shifts back to the claimant to prove that she could not perform the alternative work identified. *Id.* at 1302. Throughout the process, the ultimate burden of establishing disability remains with the claimant. *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir.1983). "A finding at any step that the claimant is not disabled ends the inquiry." *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018) (citing *Chaparro v. Bowen*, 815 F.2d 1008, 1010 (5th Cir. 1987)).

## VII.   <u>ANALYSIS</u>

### A.  Severe Impairment Issue

Powell first argues that the ALJ applied the wrong legal standard and improperly concluded that hypertension, sleep apnea, and "heart disease" were not "severe" impairments at step two. Doc. [11], at 13–14. At step two, the relevant inquiry is "whether the claimant has a severe impairment." *Ramirez*, 606 F. App'x 775, 777–78 (citing 20 C.F.R. § 404.1520(a)(4)). For

purposes of this step, "[a]n impairment can be considered as not severe *only if* it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (emphasis in original) (quoting *Loza v. Apfel*, 219 F.3d 378, 391 (5th Cir. 2000)). Stated differently, "an impairment is severe if it is anything more than a 'slight abnormality' that 'would not be expected to interfere' with a claimant's ability to work." *Id.* (quoting *Loza*, 219 F.3d at 391). Whether impairments are considered "severe" requires viewing them collectively, not individually. *Loza*, 219 F.3d at 394.

### i.    Any Step Two Error is Harmless

When an ALJ does not conclude his or her analysis at step two, the case "did not depend upon a conclusion of the 'non-severity' of [one of the claimant's] condition[s.]" *Adams v. Bowen*, 833 F.2d 509, 512 (5th Cir. 1987). *See also Herrera v. Comm'r of Soc. Sec.*, 406 F. App'x 899, 903 (5th Cir. 2010); *Jones v. Astrue*, 851 F. Supp. 2d 1010, 1016–17 (N.D. Tex. 2012). Indeed, the question of whether the ALJ applied the correct standard, *Chaparro v. Bowen*, 815 F.2d 1008, 1011 (5th Cir. 1987), or properly found a particular impairment to be "severe," *Shipley v. Sec'y of Health & Human Servs.*, 812 F.2d 934, 935 (5th Cir. 1987), is "irrelevant" so long as the ALJ subsequently considered the impairments found to be "non-severe" at later steps, *Dise v. Colvin*, 630 F. App'x 322, 324 (5th Cir. 2015); *Adams*, 833 F.2d at 512. Ultimately, the ALJ's erroneous decision or silence at the second step is harmless error when (i) the ALJ continues to subsequent steps and (ii) the ALJ considered those "non-severe" impairments along with "severe" impairments in the remainder of the sequential analysis. *See*, *e.g.*, *Dise*, 630 F. App'x at 324; *Adams*, 833 F.2d at 512; *Harrell v. Bowen*, 862 F.2d 471, 481 (5th Cir. 1988).

Here, the ALJ ruled that, *inter alia*, hypertension and sleep apnea were not "severe impairments" because "they do not cause the claimant more than minimal functional limitations." Doc. [10], at 16–17. However, the ALJ found that Powell met his burden at the second step because he had several "severe" impairments, including degenerative arthritis, lumbar disc disease, peripheral neuropathy, sciatica, obesity, and diabetes mellitus. *Id.*, at 16. Additionally, the ALJ expressly stated that he considered "all [of] the evidence" at the later steps, even citing to reports that took into account Powell's hypertension and sleep apnea. *Id.*, at 18–19. In short, the ALJ's conclusion that the plaintiff's sleep apnea and hypertension were "not severe" could not be considered more than harmless error. *Dise*, 630 F. App'x at 324; *Adams*, 833 F.2d at 512.

Turning to his "heart disease," Powell argues that the ALJ did not discuss it as an independent impairment. Doc. [11], at 11–13.[2] Powell is correct that the ALJ did not make a ruling on Powell's "heart disease." *See, e.g., id.*, at 16. However, it is well-established that an ALJ's failure to opine on an impairment at step two only requires the Court to infer that the ALJ found the impairment to be "severe" and ensure that the impairment was discussed at the later steps. *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). *See also Herrera*, 406 F. App'x at 903. Here, the ALJ did not discuss Powell's "heart disease," went past step two, and considered heart-related issues and impairments later in the analysis. *See, e.g.*, Doc. [10], at 21. Therefore, the Court infers that the ALJ found Powell's "heart disease" to be a "severe" impairment and the omission is harmless error. *Herrera*, 406 F. App'x at 903. Powell's argument fails.

---

[2] Nevertheless, the ALJ certainly considered evidence of a heart condition and considered whether the evidence was consistent with ischemic heart disease in Listing 4.04 of the Listing of Impairments. Doc. [10], at 17–19, 21–22.

### ii.    **<u>Alternative:</u> Did the ALJ Apply the Correct Legal Standard and Have Substantial Evidence?**

The Court addresses Powell's argument on the merits in the alternative. The Court first addresses Powell's argument that the ALJ applied the wrong legal standard. Doc. [11], at 13–14. In *Stone v. Heckler*, the Fifth Circuit mandated that ALJs must cite the correct standard for determining whether an impairment is severe or "the claim must be remanded to the [Commissioner] for reconsideration." 752 F.2d 1099, 1106 (5th Cir. 1985). However, the Fifth Circuit has subsequently retreated from the bright-line remand rule suggested in *Stone*, clarifying that "remand [is] only [appropriate] where there is no indication the ALJ applied the correct [*Stone*] standard." *Hampton v. Bowen*, 785 F.2d 1308, 1311 (5th Cir. 1986). Furthermore, if the ALJ denies a plaintiff's claim at a later step and there are no other errors in the ALJ's analysis, the failure to apply the correct second-step standard is harmless error. *Harrell*, 862 F.2d at 481. *See also Jones*, 851 F. Supp. 2d at 1016–17. Finally, an express citation to *Stone* or related cases is not required if the correct standard is nevertheless applied in substance. *See*, *e.g.*, *Loza*, 219 F.3d at 391–92.

Here, the ALJ applied the correct standard in substance. *Ibid.* He recited the correct legal standard almost verbatim in his "Applicable Law" section. *See* Doc. [10], at 15; *Salmond*, 892 F.3d at 817. Additionally, he repeatedly based his conclusions at step two on whether Powell's various medical impairments "caused more than minimal limitations in . . . [his] ability to perform basic work-related tasks." *See*, *e.g.*, Doc. [10], at 16–17. This is the same standard merely stated in the active voice. *Acosta v. Astrue*, 865 F. Supp. 2d 767, 781 (W.D. Tex. 2012) (collecting cases).[3] The

---

[3] *See also Martin v. Heckler*, 748 F.2d 1027, 1031 (5th Cir. 1984); *Brunson v. Astrue*, 387 F. App'x 459, 461 (5th Cir. 2010) (per curiam) (unpublished); *Altvater v. Barnhart*, No. CIV.A.SA04CA0079RFNN, 2005 WL 475149, at *6 (W.D. Tex. Feb. 10, 2005), *report and recommendation adopted*, No. SA 04–CA–0079–RF, 2005 WL 469596 (W.D. Tex. Feb. 28, 2005). Cf. *Padalecki v. Astrue*, 688 F. Supp. 2d 576, 585–86 (W.D. Tex. 2010); *Scroggins v. Astrue*, 598 F. Supp. 2d 800, 805–6 (N.D. Tex. 2009).

ALJ's paraphrasing of *Stone* is materially indistinguishable. Doc. [10], at 16–17; *Salmond*, 892 F.3d at 817. Powell's argument fails.

Further, the Court addresses whether Powell's hypertension, sleep apnea, and "heart disease" were "severe" impairments. Powell argues that he "credibly" testified that his hypertension and sleep apnea are "severe" impairments. Doc. [11], at 12. It is true that "[t]he ALJ must consider subjective evidence of pain," *Wren v. Sullivan*, 925 F.2d 123, 128–29 (5th Cir. 1991) (citations omitted), and disability, *Luckey v. Astrue*, 458 F. App'x 322, 326 (5th Cir. 2011), however, "it is within . . . [the ALJ's] discretion to determine the pain's disabling nature," *Wren*, 925 F.2d at 128– 29. Consideration of subjective evidence of pain and disability, of course, is a credibility determination. *See*, *e.g.*, *Briggs v. Astrue*, No. A–08–CA–220–SS, 2009 WL 10710096, at *5 (W.D. Tex. Apr. 20, 2009), *aff'd*, 353 F. App'x 946 (5th Cir. 2009). Nevertheless, there must be substantial evidence in the record supporting the ALJ's determination. *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000).[4]

Here, the ALJ considered Powell's "medically determinable impairments" and concluded that Powell's statements about the "intensity, persistence, and limiting effects of . . . [his subjective] symptoms is not entirely consistent with the medical evidence and other evidence in the record[.]" Doc. [10], at 20. The ALJ further opined that the medical evidence showed that Powell responded well to conservative treatment. *Ibid.* The ALJ, thus, considered Powell's subjective feelings of pain/disability and found his testimony somewhat inconsistent with the medical evidence. *Falco v. Shalala*, 27 F.3d 160, 163–64 (5th Cir. 1994).

With regard to hypertension, Powell argues that (i) his high blood pressure should have sent him "straight to the hospital" and (ii) that he credibly testified that high blood pressure caused his

---

[4] *See also Davis v. Colvin*, No. 1:15–CV–265–JCG, 2017 WL 888491, at *4 (S.D. Miss. Mar. 6, 2017).

head to hurt "every day."  Doc. [11], at 12. Powell declines to cite any support, beyond blood pressure readings in themselves, for these arguments. *Ibid.* Furthermore, Powell's subjective complaint that he suffers "real bad" headaches "every day" is directly contradicted by the administrative record. Doc. [10], at 45. Medical records show that Powell did not indicate that he was suffering from a headache. *Id.*, at 438, 457, 508. Indeed, the one time that he was hospitalized after failing to take his blood pressure medication, Powell did not complain of headaches. *Id.*, at 457. By contrast, the ALJ identified substantial evidence that Powell's hypertension was (i) controlled by medication and (ii) his cardiovascular exams revealed regular rhythm, normal heart sounds, no gallops, murmurs, or rubs. *Id.*, at 16–17. As such, the ALJ was fully justified in declining to credit Powell's subjective evidence of pain, *Wren*, 925 F.2d at 128–29, as well as concluding that his hypertension was a "slight abnormality having such minimal effect on . . . [him] that it would not be expected to interfere with . . . [his] ability to work, irrespective of age, education or work experience," *Salmond*, 892 F.3d at 817 (citations omitted).

Turning to his sleep apnea, Powell argues that (i) an isolated reference to "sleep-related disorders" as "severe" in the reconsideration-level disability determination and (ii) his credible testimony show that his sleep apnea is a "severe" impairment. Doc. [11], at 12–13. To begin with, the reconsideration level disability determination was based on an incomplete medical record that only covered 2015. *See* Doc. [10], at 69–78. By contrast, the ALJ specifically referred to documents that were generated after 2015 and well into 2017. *Id.*, at 17. Furthermore, as the ALJ noted, Powell's sleep apnea appeared "stable with conservative treatment," which was supported by evidence from 2017. *See*, *e.g.*, Doc. [10], at 503, 508, 518. Finally, Powell consistently denied that he was fatigued. *Id.*, at 508, 511, 514–15, 518, 521, 524. As such, the ALJ was fully justified in declining to credit Powell's subjective evidence of disability, *Luckey*, 458 F. App'x at 326, as

well as concluding that his sleep apnea was a "slight abnormality having such minimal effect on . . . [him] that it would not be expected to interfere with . . . [his] ability to work, irrespective of age, education or work experience," *Salmond*, 892 F.3d at 817 (citations omitted).[5]

Powell's first argument fails.

## B.  RFC Substantial Evidence Issue

Next, Powell argues that the ALJ's conclusion that Powell is capable of sedentary work with limitations was not supported by substantial evidence. Doc. [11], at 14–15. The Court understands Powell to be challenging the ALJ's RFC determination in this argument. *Ibid.* The Court reserves discussion of this argument until other legal issues are addressed that may bear on the Court's analysis.

## C.  SSR 96–9P Issue

Third, Powell argues that the ALJ erred by finding Powell capable of performing sedentary work in contravention of SSR 96–9P. Doc. [11], at 15–17.[6] In support, Powell argues that the ALJ's decision directly contradicts Mohammed Assaf, M.D.'s ("Dr. Assaf's") medical report, which the ALJ accorded great weight. *Ibid.* Powell points out several aspects of the ALJ's opinion that, he believes, mischaracterized Dr. Assaf's conclusions. *Ibid.*

First, Powell argues that the ALJ erroneously concluded that he, Powell, could "lift/carry/push/pull 20 pounds occasionally and 10 pounds frequently[.]" Doc. [11], at 15. Powell argues that this conclusion is inconsistent with Dr. Assaf's conclusions, which Powell

---

[5] Since the ALJ did not discuss Powell's "heart disease" as a medically determinable impairment, the Court declines to address Powell's argument in the alternative and relies on the primary reasoning above..

[6] At the outset, "[t]he Social Security Administration's rulings are not binding on th[e] court, but they may be consulted when the statute at issue provides little guidance." *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001) (per curiam) (citing *B.B. ex. rel. A.L.B. v. Schweiker*, 643 F.2d 1069, 1071 (5th Cir.1981)). Courts in the Fifth Circuit have routinely found SSR 96–9P to be highly persuasive. *See, e.g.*, *Carnahan v. Apfel*, 247 F.3d 241 (5th Cir. 2001). *See also Ginn v. Saul*, No. CV 19–12323, 2020 WL 7890734, at *8 (E.D. La. Nov. 2, 2020), *report and recommendation adopted*, No. CV 19–12323, 2021 WL 40185 (E.D. La. Jan. 5, 2021); *Roberson v. Colvin*, No. 2:13–CV–197, 2015 WL 1408925 (N.D. Tex. Mar. 27, 2015).

characterizes, as "only opin[ing] [that] he could lift/push/pull 20 pounds and only stand/walk 2 hours." *Id.*, at 16. On this point, while Dr. Assaf concluded that Powell could not push, lift, or pull more than 20 pounds, he did not restrict how *often* Powell could push, lift, or pull up to 20 pounds. Doc. [10], at 566. In turn, the ALJ's conclusion that Powell could "frequently push and/or pull with [his] upper extremities" is not inconsistent with Dr. Assaf's conclusion, which restricts the weight pushed and pulled alone. Even assuming *arguendo* that the ALJ erred in failing to limit "pushing and pulling" to 20 pounds, the error would be harmless under SSR 96–9P. *See* Social Security Ruling 96–9P, 1996 WL 374185, at *6 (S.S.A. July 2, 1996) ("Lifting/carrying and pushing/pulling: If an individual is unable to lift 10 pounds or occasionally lift and carry items like docket files, ledgers, and small tools throughout the workday, the unskilled sedentary occupational base will be eroded. . . . *Limitations or restrictions on the ability to push or pull will generally have little effect on the unskilled sedentary occupational base*."). Powell's argument fails.

Second, Powell argues that the ALJ erroneously concluded that Powell was able stoop on rare occasions, which, he claims, contradicts Dr. Assaf's report. *Id.*, at 16. The Court turns to Dr. Assaf's report, which, in relevant part, states: "How often can the individual perform the following POSTURAL ACTIVITIES?" Doc. [10], at 564. Postural activities are listed and followed with three columns of boxes labeled: (i) "frequently," which was defined as "1/3 to 2/3 of an 8 hour day"; (ii) "occasionally;" and (iii) "never," which was defined as "**very little up to 1/3 of an 8-hour day**." *Id.*, at 564 (emphasis added). For each listed postural activity, which included "climb, balance, stoop, crouch, kneel, [and] crawl," Dr. Assaf checked "never," which of course means "very little up to 1/3 of an 8-hour day[.]" *Ibid.* Within itself, the "never" finding, i.e. "very little up to 1/3 of an 8-hour day," is plainly insufficient to *require* a finding that the plaintiff cannot engage in sedentary work. *See* 1996 WL 374185, at *8 (S.S.A. July 2, 1996) ("An ability to stoop

occasionally; i.e., *from very little up to one-third of the time*, is required in most unskilled sedentary occupations. A complete inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply, *but restriction to occasional stooping should, by itself, only minimally erode the unskilled occupational base of sedentary work*."). Powell's argument fails.

### D.  SSR 96–8P Issue

Fourth, Powell argues that the ALJ failed to follow SSR 96–8P in formulating his RFC statement and the hypothetical offered at the supplemental hearing. Doc. [11], at 17–18. In particular, the ALJ failed, Powell argues, because (i) "no one medical reviewing [sic] or examining source opinion . . . is consistent with the ALJ's RFC finding;" (ii) "nowhere in the statement, or indeed the Decision, are the full limitations and restrictions opined by the Commissioner's own examining specialist[;]" and (iii) the ALJ "misstat[ed] the limitations so the VE never had the opportunity to respond to the actual medical evidence of record." Doc. [11], at 17. [7]

Turning to his second argument, Powell argues that the ALJ violated SSR 96–8P by failing to state "the full limitations and restrictions opined by the Commissioner's own examining specialist." Doc. [11], at 17–18. It is true that the ALJ is responsible for determining a claimant's RFC. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). However,  "[t]he RFC assessment is based upon '*all* of the relevant evidence in the case record,' including, but not limited to, medical history, medical signs, and laboratory findings; the effects of treatment; and reports of daily

---

[7] Referencing the entire 568-page administrative record without citation or specification, Powell first argues that there is "no one medical reviewing or examining source opinion . . . consistent with the ALJ's RFC finding[.]" Doc. [11], at 17. Unfortunately, Powell does not enlighten the Court about *how* the ALJ's RFC finding is inconsistent with *all* of the "medical reviewing or examining source opinion[s.]" *Ibid.* Similarly, with this argument, Powell does not specify whether the ALJ's *entire* RFC finding is unsupported. *Ibid.* In an earlier Order, the Court specified that "[e]ach contention must be supported by specific reference to the portion of the federal court record relied upon and by citations to statutes, regulations and cases supporting [the] [p]laintiff's position." Doc. [3], at 2. In turn, this argument is not cognizable under the Court's order. *Ibid.*

activities, lay evidence, recorded observations, medical source statements, and work evaluations.'"
*Gray v. Astrue*, No. 1:09–CV–0101–BI, 2011 WL 856941, at *5 (N.D. Tex. Mar. 11, 2011)
(quoting Soc. Sec. Ruling 96–8p (July 2, 1996) (emphasis in original)). However, the ALJ need
not include any *specific* words, like Powell argues, in his decision "so long as the decision showed
that the ALJ considered those limitations in reaching the RFC determination." *See*, *e.g.*, *Hall v.
Berryhill*, No. CV H–17–2029, 2018 WL 4103229, at *7 (S.D. Tex. Aug. 7, 2018).[8] Since the ALJ
expressly considered and relied on Dr. Assaf's report, *see*, *e.g.*, Doc. [10], at 22,  Powell's
argument fails, Doc. [11], at 17–18.

Turning to his third supporting argument, Powell argues that the ALJ "misstated the limitations
so the VE never had the opportunity to respond to the actual medical evidence of record." Doc.
[11], at 17. In the Fifth Circuit, it well-established that:

> Unless the hypothetical question posed to the vocational expert by the ALJ can be
> said to incorporate reasonably all disabilities of the claimant recognized by the ALJ,
> and the claimant or his representative is afforded the opportunity to correct
> deficiencies in the ALJ's question by mentioning or suggesting to the vocational
> expert any purported defects in the hypothetical questions . . . a determination of
> non-disability based on such a defective question cannot stand.
>
> [*Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001) (quoting *Bowling v. Shalala*, 36
> F.3d 431, 436 (5th Cir. 1994)).]

"The ALJ [i]s only obligated to reasonably incorporate in his hypothetical all of . . . [the]
disabilities that he recognized." *Herring v. Astrue*, 788 F. Supp. 2d 513, 518 (N.D. Tex. 2011).[9]

---

[8] This proposition is well-established in the Fifth Circuit. *See*, *e.g.*, *Capers v. Berryhill*, No. CV 16–1360, 2018 WL
633891, at *5 (W.D. La. Jan. 9, 2018); *Short v. Astrue*, No. 3:11–CV–713–N–BN, 2013 WL 655020, at *6 (N.D. Tex.
Feb. 5, 2013); rec. adopted, 2013 WL 655022 (N.D. Tex. Feb. 22, 2013); *Downing v. Astrue*, No. 2:11–CV–170, 2012
WL 4354928, at *5 (N.D. Tex. Sep. 7, 2012), *report and recommendation adopted*, 2012 WL 4354915 (N.D. Tex.
Sept. 24, 2012); *Gonzalez v. Astrue*, No. 3:10–cv–2003–O–BF, 2012 WL 1058114, at *7 (N.D. Tex. Jan. 26, 2012),
*report and recommendation adopted*, 2012 WL 1065459 (N.D. Tex. Mar. 29, 2012).
[9] *See also Hughes v. Berryhill*, No. 7:18–CV–00087–BP, 2019 WL 585440, at *3–*4 (N.D. Tex. Feb. 13, 2019), *aff'd
sub nom. Hughes v. Saul*, 783 F. App'x 475 (5th Cir. 2019); *Maxie v. Saul*, No. 3:19–CV–00482, 2020 WL 278400,
at *5 (W.D. La. Jan. 7, 2020), *report and recommendation adopted*, No. 3:19–CV–00482, 2020 WL 265925 (W.D.
La. Jan. 17, 2020).

Here, Powell argues that the ALJ failed to follow SSR 96–8P in formulating, *inter alia*, the hypothetical offered at the hearing. Doc. [11], at 17–18. Powell focuses, in *relevant* part, on the following language: "[i]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96–8P, at *5 (S.S.A. July 2, 1996). On this basis, Powell specifies that Dr. Assaf's report "read in the only way that makes it reasonable, consistent and substantial includes the limitations to never perform any postural, or carry any weight occasionally." Doc. [11], at 18.

The ALJ asked the following hypothetical question to the VE:

> [A]ssume we have a younger individual. There is limited education. And they have a vocational background similar to that of the Claimant. The individual can lift and/or carry 20 pounds occasionally and 10 pounds frequently. They can stand and/or walk for two hours in an eight-hour day. They can sit for six hours in an eight-hour day. They require a sit/stand option with an alternating interval of one to two hours. They can frequently push and pull with upper extremities. They can frequently reach waist to chest with both arms. They can constantly handle with both hands, constantly finger with both hands, and they can frequently feel. They must avoid working around—I mean they must avoid climbing ramps or stairs. They must avoid climbing ladders and scaffolds. They must avoid balancing. They must avoid stooping. They must avoid kneeling. They must avoid crouching. And they must avoid crawling. They can occasionally work around extreme heat. They must avoid working around high, exposed places. They must avoid working around moving, mechanical parts. They can frequently work around wetness and humidity. They may frequently work around vibration and frequently work around pulmonary irritants.

> [Doc. [10], at 56–57.]

First, Powell's argument that Dr. Assaf concluded that he could "never . . . carry any weight occasionally" is patently without merit. Doc. [11], at 18. Dr. Assaf concluded that Powell could "occasionally lift and/or carry (including upwards pulling) for a total of about 1/3 of an 8-hour workday a maximum of . . . 20 pounds." Doc. [10], at 563. Dr. Assaf also concluded Powell could "frequently lift and/or carry (including upwards pulling) for a total of about 1/3 of an 8-hour

workday a minimum of . . . 10 pounds." *Ibid.* The ALJ's hypothetical question was plainly consistent with this finding. *Id.*, at 56–57.

Turning to Powell's argument about "postural," he reads Dr. Assaf's report much too narrowly. *Ibid.* In his medical opinion, Dr. Assaf stated that, in connection with postural activities including "climb, balance, stoop, crouch, kneel, [and] crawl," Powell can "never" do them, which of course means "**very little up to 1/3 of an 8-hour day**[.]" Doc. [10], at 564 (emphasis added). In his hypothetical question to the VE, the ALJ plainly incorporated these postural limitations by specifying that the hypothetical person "must avoid … climbing ramps or stairs[,] . . . climbing ladders and scaffolds[,] . . . balancing[,] . . . stooping[,] kneeling[,] crouching[, and] crawling." *Id.*, at 56–57. If anything, "must avoid" implies *greater* limitations than "very little *up to 1/3 of an 8-hour day*[.]" *Id.*, at 564 (emphasis added). In short, the ALJ's hypothetical question to the VE was fully consistent with this portion of Dr. Assaf's medical report. *Herring*, 788 F. Supp. 2d at 518. Powell's argument fails.

### E. Does Substantial Evidence Support the ALJ's RFC Determination?

Next, Powell argues that the ALJ's conclusion that he is capable of sedentary work with limitations was not supported by substantial evidence. Doc. [11], at 14–15. The Court understands Powell to be challenging the ALJ's RFC determination. *Ibid.* In support of his argument, Powell only identifies the medical reports by Dr. Lamm and Dr. Assaf.[10] Before turning to whether there was substantial evidence for the ALJ's RFC determination, the Court addresses Powell's characterization of the respective reports.

---

[10] Powell also states that "[t]he record" supports his argument. Doc. [11], at 14–15. However, Powell does not identify portions of the record, by citation or mention, that would support this generalized argument. Thus, insofar as the plaintiff relies on "[t]he record," without specification, his argument fails. *See* Doc. [3], at 2.

Turning to Dr. Lamm's report, *see* Doc. [10], at 430–32, Powell argues that Dr. Lamm concluded that he, Powell, had a "history of diabetes with diabetic peripheral neuropathy, morbid obesity, history of depression, uncontrolled hypertension and a history of sleep apnea" and a "height of 70 inches with weight 409 pounds (BMI=58.7), blood pressure 160/120, reflex and sensation loss, with and positive straight leg raising both sitting and supine[,]" Doc. [11], at 14. Thereafter, Powell notes, Dr. Lamm concluded that Powell "would have difficulty standing long enough to perform his old work as a barber." Doc. [11], at 14. Powell properly characterized Dr. Lamm's report. *See* Doc. [10], at 430–32.

Nevertheless, Powell once more mischaracterizes Dr. Assaf's report. In full, Powell states:

> For his part, the examining neurologist identified lumbar degenerative arthritis, lumbar disc disease and peripheral neuropathy. Dr. Assaf opined a residual functional capacity to: occasional lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; standing/walking 30 minutes at a time and 2 hours total in an 8-hour workday; never climb, balance, stoop, crouch, kneel or crawl; unlimited reach, handle and finger, with frequent feeling and push/pull; no environmental restrictions; and finally "no lifting, pushing, pulling > 20 lbs." (nothing about carry). This last note on the specialist's form may resolve a potential inconsistency and resolve the claim. Dr. Assaf opine[d] that Mr. Powell can lift and / OR carry 20 pounds a third [sic] of a day and 10 pounds two thirds of a day; he also opines that Undra can only stand and / or walk 30 minutes at a time for a total of 2 hours (less than 1/3 of a workday) in an 8-hour workday. Reading the whole report[,] it is clear that claimant can lift, push and pull occasionally and frequently, but cannot carry anything a third of a day[,] since carrying necessarily implies bipedal locomotion to move things from one place to another. *A person limited to stand/walk 30 minutes at a time for a total of 2 hours, unable to lift/carry anything occasionally and never able to perform any postural activities can't work fulltime at any job*. Dr. Assaf's opinion is for [sic] less than a full range of sedentary work. SSR 96–9p. Here, the substantial evidence only supports a finding of disabled, and we request reversal for payment of benefits or for further proceedings consistent with [the] law.

[Doc. [11], at 14–15 (emphasis added).]

Powell's characterization of Dr. Assaf's medical testimony is unduly narrow. First, Powell was incorrect to suggest that Dr. Assaf concluded that he could *never*, full-stop, "climb, balance, stoop,

crouch, kneel or crawl." *Id.*, at 15. As noted above, Dr. Assaf defined "never" to mean "**very little up to 1/3 of an 8-hour day**." Doc. [10], at 564 (emphasis added). For similar reasons to above, Powell's argument fails.

Second, Powell argues that Dr. Assaf's note, in the catch-all section for items not covered elsewhere in the assessment, that "no lifting, pushing, pulling > 20 lbs" implies that Powell can never *carry* 20 pounds because the term "carry" was excluded from that "Other" section but included in an earlier section. Doc. [10], at 566.[11] In an earlier section, Dr. Assaf specifically stated that Powell can "occasionally lift and/or carry (*including upwards pulling*) for a total of about 1/3 of an 8-hour workday a maximum of . . . 20 pounds." *Id.*, at 563. Plainly, the "Other" section applies to things not addressed elsewhere in Dr. Assaf's medical report, such as whether the plaintiff can ever "lift[], push[], [and] pull[]" *more than* 20 pounds. Doc. [10], at 566. Stated differently, the "Other" section clarifies an item unclear from earlier in the report—whether there are limits on Powell's ability to push or pull as well as whether he can ever lift more than 20 pounds. *Ibid.* Furthermore, any wisps of logic in Powell's construction of "OR" are obliterated by "carry (*including upwards pulling*)" because "pull" is also mentioned in the "Other" section. *Ibid.* Finally, the fact that Dr. Assaf mentioned "lifting" and "pull" a second time along with "push" is mere semantics. *See*, *e.g.*, *Major v. Saul*, No. 3:19–CV–01500(SALM), 2020 WL 5793468, at *12 n.10 (D. Conn. Sept. 29, 2020).[12] Powell's argument fails.

Fourth, Powell further asserts that Dr. Assaf concluded that he "cannot carry anything a third of a day since carrying necessarily implies bipedal locomotion to move things from one place to another." Doc. [11], at 15. However, Dr. Assaf concluded that Powell could walk for a total of two

---

[11] In full, the prompt for the section is: "State any other work-related activities which are affected by the impairment, and indicate how the activities are affected. What are medical findings that support this assessment?" *Id.*, at 566.
[12] *See also McDonald v. Berryhill*, No. 3:16–CV–1527–BF, 2017 WL 4124282, at *4 (N.D. Tex. Sept. 15, 2017).

hours per day at 30-minute intervals, implying that "bipedal locomotion" was clearly possible. Doc. [10], at 563.[13] Additionally, the term "carry" clearly presupposes the ability to move, though Dr. Assaf's report clearly shows that Powell has some mobility limitations. *Ibid.* Indeed, Merriam-Webster's Dictionary defines "carry," in relevant part, to mean "to move while supporting : transport[.]" *Carry*, The Merriam-Webster Online Dictionary (2021), https://www.merriam-webster.com/dictionary/carry. Powell's argument fails.

Finally, the Court reaches the question of whether the ALJ's RFC determination was supported by substantial evidence. Powell only challenges the ALJ's RFC determination on the grounds that specific aspects of Dr. Assaf's report, which the ALJ gave great weight, and Dr. Lamm's report, which he gave some weight, contradict the ALJ's findings. Doc. [10], at 21–22.[14] First, the ALJ's RFC determination was consistent with Dr. Assaf's report. For example, Dr. Assaf concluded that Powell could "never" "climb, balance, stoop, crouch, kneel, [or] crawl." *Id.*, at 564. Of course, "never" was defined as "**very little up to 1/3 of an 8-hour day**." *Id.* (emphasis added). The ALJ found, *inter alia*, that Powell "must avoid" these same activities. *Id.*, at 19. The ALJ's characterization of Powell's ability to undertake these activities is plainly consistent with Dr. Assaf's medical report. *Id.*, at 19, 564. The remainder of the ALJ's findings are similarly consistent with Dr. Assaf's report. *Id.*, at 562–568.

Turning to Dr. Lamm's medical report, Powell argues that his findings "clearly show" that Powell suffers from "multiple severe medical impairments" that "preclude the performance of

---

[13] Bipedalism is "a major type of locomotion, involving movement on two feet." Bipedalism, Encyclopaedia Britannica, https://www.britannica.com/science/bipedalism.

[14] Under this Court's Order, "[e]ach contention must be supported by specific reference to the portion of the federal court record relied upon and by citations to statutes, regulations and cases supporting Plaintiff's position." Doc. [3], at 2. In his argument section, Powell only challenges the ALJ's RFC determination through reports by Dr. Lamm and Dr. Assaf. Doc. [11], at 14–15. The Court assumes that Powell is compliant with the Court's Order and only challenges the ALJ's RFC determination through these reports.

even sedentary work." Doc. [11], at 14. However, Powell only identifies, and correctly, that Dr. Lamm concluded that Powell had a "history of diabetes with diabetic peripheral neuropathy, morbid obesity, history of depression, uncontrolled hypertension and a history of sleep apnea" and a "height of 70 inches with weight 409 pounds (BMI=58.7), blood pressure 160/120, reflex and sensation loss, with and positive straight leg raising both sitting and supine[.]" *Ibid.* Thereafter, Powell notes, Dr. Lamm concluded that Powell "would have difficulty standing long enough to perform his old work as a barber." Doc. [11], at 14. Dr. Lamm's findings are fully consistent with the ALJ's conclusion that Powell is able to do sedentary work with some limitations. Doc. [10], at 22.

Finally, there was substantial evidence for the ALJ to give "great weight" to Dr. Assaf's opinion because it was consistent with the medical evidence of record. Doc. [10], at 22. For one, the ALJ noted, *id.*, at 22, Dr. Lamm concluded that the plaintiff's range of motion in his "[c]ervical spine, lumbar spine, . . . [h]ips, knees, ankles, and toes were within normal limits" and that he had "[m]otor strength intact in all four extremities[,]" *id.*, at 432. Nevertheless, Dr. Lamm also noted that Powell had "difficulty with prolonged standing" because of his "massive obesity," which would make his past work difficult. *Id.*, at 432. Furthermore, the ALJ noted that in 2016, Beatrice Aime Celian, M.D. ("Dr. Celian") concluded that Powell's motor strength and tone was "normal," his "[j]oints, [b]ones, and [m]uscles" lacked "contractures, malalignment, tenderness, or bony abnormalities[,]" his extremities lacked "cyanosis, edema, varicosities, or palpable cord[,]" his gait and station were "normal," his cranial nerves and sensations (generally) were "grossly intact[,]" and he did not have tremors. *Id.*, at 22, 522. Nevertheless, Dr. Celian also concluded that Powell had a "limited range of motion" in his "lumbar spine" and had sensation issues in his feet. *Ibid.* Dr, Assaf came to similar conclusions. *Id.*, at 562–68.

21

Ultimately, there was substantial evidence to support the ALJ's RFC determination.

### F.  Fifth Issue

On December 17, 2019, the Court ordered the parties to, *inter alia*, make sure that their (i) "argument [is] divided into sections separately treating each issue[,]" (ii) to "set forth [the] [p]laintiff's contentions relating to the issues presented and reasons for those contentions[,]" and (iii) include "specific reference to the portion of the federal court record relied upon and by citations to statutes, regulations and cases supporting the plaintiff's position." Doc. [3], at 2. Powell's fifth argument falls well short of these requirements.[15] Of the fourteen sentences in the section, seven sentences simply regurgitate, in one or two sentences, the other arguments already made. *Ibid.* There are no other arguments. Doc. [11], at 18–19. Putting aside Powell's clear failure to comply with this Court's briefing order, *see*, *e.g.*, *Hopkins v. Texas Mast Climbers, L.L.C.*, No. CIV.A. H–04–1884, 2005 WL 3435033, at *1 n.1 (S.D. Tex. Dec. 14, 2005),[16] the only cognizable contentions made in Powell's fifth argument are brief recitations of his first four arguments. In turn, his fifth argument fails for the same reasons that those same arguments failed above.

### <u>RECOMMENDATION</u>

Based on the foregoing, the undersigned recommends that the Commissioner's decision is affirmed and Powell's Complaint dismissed with prejudice.

---

[15] Beginning with the fifth argument heading, Powell states that "the administrative law judge declined to follow/failed to correctly apply the law in this case, failed to fairly and fully consider the evidence as required by the administrative procedure and Social Security Acts, and his unfavorable decision not supported by substantial evidence." *Id.*, at 3, 18. There are several different issues, addressed in sweeping terms, loaded into this heading, which violates the Court's command that "sections separately treating *each issue* and must set forth the plaintiff's contentions relating to the issues presented and reasons for those contentions[.]"  Doc. [3], at 2 (emphasis added). The issues do not, however, stop there. The actual section includes fourteen sentences. Doc. [11], at 18–19. Three sentences paraphrase the standard of review, already set forth, for substantial evidence. *Id.*, at 11, 18. The section closes with three sentences setting forth further legal principles associated with "substantial evidence." *Id.*, at 19. No sentence cites to the administrative record. *Id.*; Doc. [3], at 2. Finally, lest this section be confused with the conclusion, there is a separate section called "Conclusion." *Id.*, at 19–20.

[16] *See also In re Dahlgren Int'l, Inc.*, 147 B.R. 393 (N.D. Tex. 1992).

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Court.  A party filing objections must specifically identify those findings, conclusions and recommendations to which objections are being made; the District Court need not consider frivolous, conclusive or general objections.  Such party shall file the objections with the Clerk of the Court and serve the objections on the District Judge and on all other parties. A party's failure to file such objections to the proposed findings, conclusions and recommendation contained in this report shall bar that party from a de novo determination by the District Court. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions that have been accepted by the district court and for which there is no written objection.  *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

**SO ORDERED AND ADJUDGED**, this the 2nd day of February 2021.

/s/ *Robert P. Myers, Jr.*
ROBERT P. MYERS, JR.
UNITED STATES MAGISTRATE JUDGE